

**IN THE UNITED STATES DISTRICT COURT**

FILED

**FOR THE WESTERN DISTRICT OF TEXAS**

DEC 1 5 2000

**WACO DIVISION**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| DR. JOHN BRIZZOLARA, | § |
| WILLIAM H. FOX and | § |
| DR. J. WALT STALLINGS, | § |
| **Individually and on behalf of others** | § |
| **Similarly Situated,** | § |
| Plaintiffs, | § |
| v. | § |
| | § |
| MORGAN STANLEY DEAN WITTER, | § |
| ET AL., | § |
| Defendants. | § |

**CIVIL ACTION NO. W-00-CA-206**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a securities fraud case filed by the Plaintiffs against twenty-two Defendants, of whom

eight now file Motions to Dismiss pursuant to Rule 12(b)(6) or alternatively, For a More Definite

Statement pursuant to Rule 12(e). The Plaintiffs filed this putative class action lawsuit on July 31,

2000. The various Broker and Individual Defendants' motions raise five principle arguments in

favor of either outright dismissal or for requiring the Plaintiffs to re-plead their case: (1) that the

Plaintiffs' complaint fails to state a cause of action for a violation of section 12(a)(1) of the

Securities Act of 1933, 15 U.S.C. § 771(a)(1) ("1933 Act" or "Securities Act"); (2) that the

Plaintiffs' complaint fails to state a cause of action for a violation of section 12(a)(2) of the 1933

Act; (3) that the Plaintiffs' complaint fails to state a cause of action for a violation of section 10(b)

of the Securities Exchange Act of 1934, 15 U.S.C. § 87u-4(b)(1) ("Exchange Act") nor does the

complaint state a violation of Rule 10b-5 promulgated under the Exchange Act; (4) that the

Plaintiffs' securities fraud and Section 12(a)(1) & (2) complaints are barred by the applicable statute

55

of limitations; and (5) that the Plaintiffs' complaint fails to plead fraud with the particularity required under the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), codified in Section 21D(b) of the Exchange Act and Federal Rule of Civil Procedure 9(b).

Having carefully reviewed the various Defendants' motions, the Plaintiffs' blanket response to all eight Defendants' motion, and the replies filed by three of the Defendants, the Court finds the motions to be meritorious and that they should be **GRANTED**.

## I. Background

The Plaintiffs filed this action on July 31, 2000. The Plaintiffs' complaint arises primarily out of the Plaintiffs' alleged purchase of securities in the over the counter ("OTC") market during the period of January 4, 1998 through July 29, 1999. The gist of the Plaintiffs' complaint is that A. Colin Smith ("Smith") and members of his family (collectively "the Smith family"), the controlling shareholders of Great White Marine and Recreation, Inc. ("Great White"), a bulletin board company, orchestrated a campaign of false news releases, sales brochures, and internet postings that amounted to misrepresentations concerning the business of Great White and Great White's financial condition.

The complaint also alleges that the Smith family sold large amounts of unregistered stock to the public through a number of retail brokers and through certain other brokers whom the Plaintiffs refer to as "investment bankers." In Count One of the complaint, the Plaintiffs allege that the Broker Defendants violated Section 12(a)(2) of the Securities Act and Section 10(b) and Rule 10b-5 of the Exchange Act. In Count Four, the Plaintiffs allege that all the Defendants violated Section 12(a)(1) of the Securities Act. The allegations against the Broker Defendants in paragraph nine of the complaint can be summarized as follows: (1) the brokers opened accounts for various members of the Smith family, who sold Great White Shares through their accounts; (2) certain

2

brokers received shares of Great White as payment for their role in the distribution; (3) the Smith family sold shares of Great White to certain defendants at below market prices; (4) the Smith family derived at least $10.8 million and possibly $25 million from the sale of Great White shares through the brokers and other defendants: (5) the brokers "knowingly and recklessly republished" false information from Great White and the Smith family about Great White; (6) Smith secretly paid promoters to disseminate false information about Great White; (7) Smith and Great White misrepresented in promotional materials and Rule 15c2-11 information provided to OTC market makers and the broker defendants the amount of Great White's public float as 3.3 million shares and the brokers should have known this; (8) the brokers knowingly or recklessly failed to disclose the fact that the Smith family was "secretly distributing large amounts of Great White shares; (9) the brokers failed to disclose that they were participating in an unlawful secret distribution of shares on behalf of Great White and the Smith family.

In Count Three of the Complaint, the Plaintiffs allege that the Individual Defendants violated Section 12(a)(2) and Section 10(b) and Rule 10b-5 of the Exchange Act. In Count Four, the Plaintiffs allege that all the Defendants violated Section 12(a)(1) of the Securities Act. The allegations against the individual defendants, Joseph Kavanagh and Karl Birkenfeld, among others, in paragraph 11 of the Plaintiffs' complaint can be summarized as follows: (1) the Individual Defendants each received unregistered shares of Great White stock as payment for their participation in the dissemination of false, misleading or incomplete information concerning Great White and for their participation in the distribution of Great White's unregistered securities; (2) Defendant Karl Birkenfeld was a representative of two brokerage firms that made a market for the shares of Great White; (3) one of the brokerage firms Birkenfeld represented, Barron Chase Securities, sold

3

unregistered shares in the OTC market from securities accounts held by Smith; (4) Birkenfeld received unregistered shares as compensation for his actions in the alleged scheme orchestrated by the Smith family; (5) that each individual defendant acted as an underwriter as that term is used in Section 2(a)(11) of the Securities Act.

Broker Defendant Dean Witter Reynolds, Inc. ("Dean Witter") attacks the complaint with three arguments. First, Dean Witter argues that any claim of securities fraud or for a violation under Section 12(a)(1) & (2) is barred by the applicable statute of limitations. Dean Witter then argues that the Plaintiff's complaint fails to state a claim for relief for a violation of Section 10(b) and Rule 10(b)-5 or a claim for a violation of Section 12(a)(1) . Dean Witter also argues that the Plaintiffs have failed to meet the pleading requirements of the Reform Act and Federal Rule of Civil Procedure 9(b).

Broker Defendant Glenn Michael Financial, Inc. ("Glenn Michael") also attacks the complaint with three arguments. First, Glenn Michael argues that any claim of securities fraud or for a violation under Section 12(a)(1) & (2) is barred by the applicable statute of limitations. Glenn Michael then argues that the Plaintiff's complaint fails to state a claim for relief for a violation of Section 10(b) and Rule 10(b)-5 or a claim for a violation of Section 12(a)(1) . Glenn Michael finally argues that the Plaintiffs have failed to meet the pleading requirements of the Reform Act and Federal Rule of Civil Procedure 9(b).

Broker Defendant Equitrade Securities ("Equitrade") argues that any claim of securities fraud or for a violation under Section 12(a)(1) & (2) is barred by the applicable statute of limitations. Equitrade then argues that the Plaintiffs' complaint fails to state a claim for relief for a violation of Rule 10(b)-5 or a claim for a violation of Section 12(a)(1). Equitrade next argues that the Plaintiffs'

4

complaint does not met the heightened pleading required by Reform Act and Federal Rule of Civil Procedure 9(b). Equitrade alternatively moves for a more definite statement.

Broker Defendant Barron Chase Securities ("Barron Chase") and Individual Defendant Karl Birkenfeld argues that the Plaintiffs' complaint fails to state a claim for relief for a violation of Rule 10(b)-5 or a claim for a violation of Section 12(a)(1) & (2) because the complaint is barred by the applicable limitations period. Barron Chase and Birkenfeld next argue that the Plaintiffs' claims of securities fraud and for violations of Section 10(b) and Rule 10b-5 do not meet the heightened pleading required by the Reform Act and Federal Rule of Civil Procedure 9(b).

Individual Defendant Joseph Kavanagh argues that the Plaintiffs' complaint fails to state a claim for securities fraud or a claim for a violation of Section 12(a)(1) & (2) because the complaint is time-barred. Kavanagh next argues that the Plaintiffs' claims of securities fraud and for violations of Section 10(b) and Rule 10b-5 do not meet the heightened pleading required by the Reform Act and Federal Rule of Civil Procedure 9(b). Kavanagh alternatively moves for a more definite statement.

Broker Defendant Josephthal & Co., Inc. ("Josephthal") argues that the Plaintiffs' complaint fails to state a claim for relief for securities fraud or a claim for a violation of Section 12(a)(1) because the complaint is time-barred. Josephthal next argues that the Plaintiffs' claims of securities fraud and for violations of Section 10(b) and Rule 10b-5 do not meet the heightened pleading required by the Reform Act and Federal Rule of Civil Procedure 9(b).

Finally, Broker Defendant Taylor Stuart Securities ("Taylor Stuart") argues that the Plaintiffs' complaint fails to state a claim for relief for securities fraud or a claim for a violation of Section 12(a)(1) & (2) because the complaint is time-barred. Taylor Stuart next argues that the

Plaintiffs' claims of securities fraud and for violations of Section 10(b) and Rule 10b-5 do not meet the heightened pleading required by the Reform Act and Federal Rule of Civil Procedure 9(b).

## II. Standard for Rule 12(b)(6) and Rule 12 (e) Motions

Dismissal of a complaint is proper under Rule 12(b)(6) if it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conely v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss, the Court must accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). While all well-pleaded facts are taken as true for the purposes of a 12(b)(6) motion to dismiss, a court cannot accept as true "conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Moreover, on a motion to dismiss a federal securities fraud case for failure to state a claim, the Court must apply the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *McNamara v. Bre-X Minerals, Ltd.*, 57 F. Supp. 2d 396, 403 (E.D. Tex. 1999). Specifically, a plaintiff is required to plead the "time, place and contents of the false representations, as well as the identity of the person making the representation and what [that person] obtained thereby." *Williams v. WMX Technologies*, 112 F.3d 175, 177 (5th Cir. 1997); *Tuchman*, 14 F.3d at 1068.

A request by a defendant for a more definite statement is appropriate when the plaintiff files a complaint so vague, ambiguous and lacking in detail that the defendant cannot craft a responsive pleading. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 383-84 (1982) (Powell, J., concurring); *Taylor v. Cox*, 912 F. Supp. 140, 143 (E.D. Pa. 1995). One of the grounds for requesting a more definite statement from the plaintiff is that the plaintiff is required to plead the matters in his

complaint specifically and cannot rely on "fair notice" pleading of his allegations. Allegations of fraud must be pleaded with particularity. *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994); FED. R. CIV. P. 9(b). Rule 9(f) states that allegations of time and place are material and should be pleaded with particularity. Likewise, federal securities fraud lawsuits are covered by the requirements of Rule 9 and must be plead with particularity. *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994). Securities fraud lawsuits must not only meet the standard of Federal Rule of Civil Procedure 9(b), but also the even more stringent standards of the Reform Act.

### III. Analysis

The Court notes initially that the Plaintiffs' attempt to rely on the "group pleading" doctrine to state a cause of action against the various twenty-two defendants by breaking the defendants into three groups: Broker Defendants, Investment Banker Defendants, and Individual Defendants. The Reform Act, however, brought an end to "group pleading." *Zishka v. American Pad & Paper Co.*, 2000 WL 1310529, at *1 (N.D. Tex. 2000); *Brancca v. Paymentech, Inc.*, 2000 WL 145083, at *8 (N.D. Tex. 2000). One district court has even noted that "to permit a judicial presumption as to particularity simply cannot be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant." *Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1350 (S.D. Cal. 1998). This blanket approach has been uniformly rejected by federal courts. Fraud complaints, especially, "may not rely on blanket references to conduct of 'defendants and each of them,' but instead must inform each defendant of the conduct which constitutes the alleged violation." *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988).

The Plaintiffs tendency toward group pleading even extends to their single response to the eight motions to dismiss. In their response to the eight motions to dismiss, the Plaintiffs advance

four arguments against dismissal. The Plaintiffs address the issue of limitations by arguing that they filed their lawsuit within one year of their discovery of the alleged fraud of the Defendants, and that the Court should employ the doctrine of equitable tolling as announced in *Katz v. Amos Treat & Co.*, 411 F.2d 1046 (2d Cir. 1969) to avoid application of the one-year statute of limitations for their claims of violations of Section 12(a)(1), Section 12(a)(2) and for securities fraud. Next, Plaintiffs cite *Pinter v. Dahl*, 486 U.S. 622 (1988) as authority that their complaint sufficiently alleges the elements of a Section 12(a)(1) violation. The Plaintiffs then argue that they have pleaded with sufficient particularity a claim for securities fraud and for violations of Section 10(b) and Rule 10b-5 under either the Reform Act or Federal Rule of Civil Procedure 9(b). Finally, the Plaintiffs argue that the various Defendants have not met the burden required by the federal courts in order to dismiss a case under Federal Rule of Civil Procedure 12(b)(6).

## A.      Statute of Limitations for Securities Fraud and Section 12(a)(1) Liability

### 1.      Securities Fraud

Plaintiffs argue that they filed this cause of action within one year of their discovery of the fraudulent scheme. They argue that the SEC's filings of civil enforcement actions against Anita Carlisle, one of the promoters involved in the alleged fraudulent scheme, *SEC v. Anita Carlisle, et al.*, W-98-CA-352 filed on October 27, 1998, and against Great White and Smith, *SEC v. Great White Marine & Recreation, Inc. and A. Colin Smith*, W-99-CA-230 filed on July 28, 1999, were their first notice of the scheme, and that they were not aware of the particulars of the SEC's allegations until a few days after the filing of the action against Great White and Smith. Plaintiffs argue that this cause of action was brought within one year of their discovery of the fraud in late July 1999. The Defendants argue that Congress made the statute of limitations for securities fraud cases

8

an absolute one-year period not subject to equitable tolling. 15 U.S.C. § 78aa. The Defendants also argue that the Plaintiffs' own allegations indicate that they knew of the fraudulent scheme as early as October 1998. The Court finds that the Plaintiffs' argument that they filed their lawsuit claiming securities fraud within one year of their discovery of the fraudulent scheme is without merit. The Plaintiffs own complaint belies this argument. The Court finds that the Plaintiffs knew or should have known of the fraudulent scheme when the SEC filed its civil enforcement action against Carlisle in October 1998. The Plaintiffs waited until July 2000 to file this lawsuit. Accordingly, the Plaintiffs' claims for fraud are barred by the one-year statute of limitations for securities fraud. Therefore, the Plaintiffs' securities fraud claims against Dean Witter, Glenn Michael, Barron Chase, Josephthal, Taylor Stuart, Birkenfeld, and Kavanagh are dismissed as time-barred.

### 2.  Section 12(a)(1) & (2)

The statute of limitations for Section 12(a)(1) & (2) claims is a short one. "No action shall be maintained . . . to enforce a liability created under section 12(a)(1), unless brought within one year after the violation upon which it is based." 15 U.S.C. §§ 77m. The Plaintiffs argue that the Court should apply the equitable tolling considerations discussed in *Katz v. Amos Treat & Co.*, 411 F.2d 1046 (2d Cir. 1969) to toll the one-year limitations period. Plaintiffs argue that although they could have known that they purchased unregistered securities much early than they actually discovered, they did not realize that the Great White shares were not exempt from the registration requirements until after the SEC filed its civil enforcement action against Great White and Smith. Plaintiffs further argue that the Broker Defendants alone had access to knowledge that Great White shares sold were sold for Smith. Thus, Plaintiffs argue that they could not have known that the shares they purchased were sold for Smith and Great White until the SEC filing against Great White and Smith.

The equitable tolling doctrine, however, is inapplicable to and inconsistent with the express language and policy underlying the limitations period for Section 12(a)(1) & (2) violations. *Cook v. Avien, Inc.*, 573 F.2d 685, 691-92 (1st Cir. 1978). Furthermore, application of equitable tolling is also inconsistent with the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupuse & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991), which expressly rejected equitable tolling of Section 13's one-year limitations period for claims under Section 12(a)(2). The Court finds that the *Lampf* rationale applies to Section 12(a)(1) as well. By establishing a one-year limitations period from the date of the **violation** rather than the date of **discovery**, Congress expressly indicated that the limitations period for Section 12(a)(1) & (2) claims is absolute. The Plaintiffs' filing of their lawsuit claiming violations of Section 12(a)(1) & (2) was tardy. Therefore, the Plaintiffs' Section 12(a)(1) & (2) claims against Dean Witter, Glenn Michael, Equitrade, Barron Chase, Josephthal, Taylor Stuart, Birkenfeld, and Kavanagh are dismissed as time-barred.

**B.      Section 12(a)(1) of the 1933 Act**

Even if the Plaintiffs' Section 12(a)(1) claims against the Defendants were not time-barred, the Court would find that the Plaintiffs fail to plead the requisite elements to state a Section 12(a)(1) violation. In order to state a claim of a violation of Section 12(a)(1) of the 1933 Act, a plaintiff must plead that the defendant offered or sold the securities to the plaintiffs. 15 U.S.C. § 77l(a)(1); *Raiford v. Bus Lease, Inc.*, 825 F.2d 351, 354 (11th Cir. 1987). Specifically, Section 12(a)(1) contemplates a buyer-seller relationship akin to traditional contractual privity. Thus, the Section 12(a)(1) plaintiff must plead that the securities were purchased directly from the defendant. The Supreme Court in *Pinter v. Dahl*, 486 U.S. 622, 647 (1988) held that liability for an unlawful transaction under Section 12(a)(1) of the Securities Act attaches only to sellers of securities. The

Court added that such liability could attach not only to a person who actually passes title to a security, but also to a "solicitor seller," who "successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 647. In *Pinter*, Pinter solicited an investment from Dahl in a drilling venture. Dahl also called family members and friends and convinced them to invest as well. Without introducing them to Pinter, Dahl helped these prospects complete Pinter's subscription agreement, which stated that the venture interests were not registered with the SEC. The prospects completed the agreements and paid Pinter's company. Dahl received no commission or financial benefit in connection with the purchases. When the venture failed, Dahl and his contacts sued Pinter seeking recission of their investments on the ground that the sale of unregistered securities violated Section 12(a)(1) of the Securities Act. *Pinter*, 486 U.S. at 625. The Supreme Court indicated that Pinter was liable to the investors because Pinter made the sale of investment interests to the investors themselves without the involvement of a middleman or intermediary. The Supreme Court made it clear that a defendant who neither sells to the purchaser not solicits the purchase, is not liable as a "seller" under Section 12(a)(1). *Pinter*, 486 U.S. at 641. The statute provides that any person who sells or offers to sell a security in violation of the registration requirements "shall be liable to the person purchasing such security from him." 15 U.S.C. § 77l. The Supreme Court held that this provision envisions a class of defendants who may be subject to liability as those who sell unregistered securities in a traditional buyer-seller relationship not unlike traditional contractual privity. *Pinter*, 486 U.S. at 641-42. Moreover, the Court noted that Section 12(a)(1) imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Therefore, according to the Supreme Court, a buyer cannot recover against his seller's seller. *Pinter*, 486 U.S.

at 644 n.21.  Thus, Section 12(a)(1) liability will lie only against a defendant with a direct, buyer-seller relationship with the plaintiff, or to someone who solicits that sale by the purchaser from the seller even though that person did not actually pass title.  *Pinter*, 486 U.S. at 642, 644-45.

### 1.     Dean Witter

Broker Defendant Dean Witter argues that the Plaintiffs have failed to allege that: (1) Dean Witter "offered or sold" unregistered securities; and (2) Plaintiffs "purchased" unregistered securities from Dean Witter.

Plaintiffs do not dispute that their complaint contains no allegation that they purchased unregistered securities from Dean Witter.  Plaintiffs merely allege that they each "made purchases of [Great White] shares during the Class Period."  Plaintiffs' Complaint, ¶¶ 6-8.  Nowhere does the complaint allege that Plaintiffs purchased shares from Dean Witter.

Plaintiffs' allegations are also insufficient to establish that Dean Witter was a "seller" of securities.  Under Section 12(a)(1), a defendant can be liable only if it either: (1) passed title in the security to another; or (2) actually solicited the purchase of the security.  *Pinter*, 486 U.S. at 647; *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1113 (5th Cir. 1998).  Plaintiffs' response to Dean Witter's argument relies solely on the "solicited" prong of liability under Section 12(a)(1).  In order to satisfy the "solicited" prong, Plaintiffs must allege facts which establish that Dean Witter actually played an active role in soliciting purchasers to buy Great White shares.  *Levitin v. A Pea in the Pod, Inc.*, 1997 WL 160184, at *4 (N.D. Tex. 1997).  The complaint does not allege facts that show Dean Witter solicited sales from the Plaintiffs.  The Plaintiffs' response, however, hypothesizes that perhaps the Broker Defendants, as a group, "acted as market makers" for Great White shares.  The response then goes on to describe what role a "market maker" might play in the solicitation of sales

12

of Great White shares.  Nowhere, however, do Plaintiffs allege or even argue that Dean Witter

specifically acted as a market maker.  Even if Plaintiffs' allegation specifically cite Dean Witter as

a market maker, this allegation will be insufficient to meet the "solicited" prong of Section 12(a)(1)

liability.  In order to meet this pleading burden, the Plaintiffs must allege that Dean Witter took some

action that encouraged the Plaintiffs to purchase Great White shares, i.e., that Dean Witter actually

solicited the sale.  The complaint alleges no such facts.  Therefore, the complaint fails to state a

claim for a Section 12(a)(1) violation against Dean Witter.

    **2.**    **Glenn Michael**

    Broker Defendant Glenn Michael argues that the Plaintiffs' claim for a Section 12(a)(1)

violation is defeated by the statutory exemptions created by the 1933 Act.  Section 4 of the 1933 Act

states that:

> The provisions of section 5 shall not apply to
>
> \*\*\*
>
> (3) transactions by a dealer (including an underwriter no longer acting as an underwriter in respect of the security involved in such transaction)
>
> \*\*\*
>
> (4) brokers' transactions executed upon customers' orders on any exchange or in the over-the-counter market but not the solicitation of such orders.

Plaintiffs do not dispute that Glenn Michael never sold securities to the class members, never

published a quote, and made only unsolicited sales in the OTC market.  Glenn Michael argues that

the complaint alleges facts which defeat the Plaintiffs' claim.  Plaintiffs not only fail to allege that

they purchased shares from Glenn Michael, they affirmatively allege that the shares were purchased

from someone other than Glenn Michael.  Likewise, Plaintiffs fail to allege that they were solicited

to purchase Great White shares by Glenn Michael.

Under Section 12(a)(1), a defendant can be liable only if it either (1) passed title in the security to another, or (2) actually solicited the purchase of the security. *Pinter*, 486 U.S. at 647; *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1113 (5th Cir. 1998). Because the complaint fails to allege facts that satisfy either of the liability prongs under Section 12(a)(1), the complaint fails to state a claim for a Section 12(a)(1) violation against Glenn Michael.

### 3.    Equitrade

Equitrade argues that even if it were a market maker, as the Plaintiffs allege it was, Section 12(a)(1) also requires the Plaintiffs to allege that they purchased their shares directly from Equitrade. Instead, the complaint merely alleges that Equitrade, which is not differentiated from the other Defendants in any way, "sold common stock into the OTC market for purchase by the class." Equitrade points to *In re Laser Arms Corporation Securities Litigation*, 794 F. Supp. 475, 481-82 (S.D.N.Y. 1989) for the proposition that mere allegations that the stock had reached the public through the market makers were insufficient to plead a violation of Section 12(a)(1). The complaint must plead that the plaintiffs obtained their shares directly from the market maker. It is only with an allegation of privity or direct solicitation that Section 12(a)(1) liability will attach to a defendant. Because the complaint fails to allege facts that meet this pleading requirement, the complaint fails to state a claim against Equitrade for a violation of Section 12(a)(1).

### 4.    Josephthal

Defendant Josephthal's argument echoes that of Defendant Glenn Michael. Josephthal argues that unsolicited sales of stock on the OTC market are specifically exempt from Section 12(a)(1) liability under Section 4 of the 1933 Act. The Plaintiffs allege that any Great White shares

14

sold by Josephthal were sold on the OTC market on direction of the Smith Family. Nowhere in the Plaintiffs' complaint are there allegations that Josephthal actually solicited sales of Great White stock. Just as for Glenn Michael, Plaintiffs fail to allege facts which establish either of the liability prongs of Section 12(a)(1) as to Josephthal. Therefore, Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(1) against Defendant Josephthal.

### 5.     Taylor Stuart

Broker Defendant Taylor Stuart argues that the Plaintiffs have failed to allege that they purchased any of the Great White shares directly from Taylor Stuart. Instead, Plaintiffs allege that they purchased the shares in the OTC market. Once again, the mere allegation that a defendant sold securities to the public does not satisfy the strict privity requirements of Section 12(a)(1). *Union Carbide Corp. Cons. Bus. Sec. Litig.*, 676 F. Supp. 458, 475 (S.D.N.Y. 1997). Accordingly, the Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(1) against Defendant Taylor Stuart.

### 6.     Kavanagh

Defendant Kavanagh argues that Plaintiffs have failed to allege that they purchased the securities from, or were solicited to buy the securities by, Kavanagh. Rather, according to Kavanagh, the Plaintiffs have merely alleged that they purchased Great White shares in the OTC market and that Kavanagh sold shares in the OTC market. Kavanagh argues that the Plaintiffs cannot recover from their brokers' seller. *Pinter*, 486 U.S. at 644 n.21. The Court finds that the Plaintiffs allegations are insufficient to establish that Kavanagh sold securities to the class or solicited members of the class to purchase Great White shares. Accordingly, the Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(1) against Defendant Kavanagh.

## C.    Section 12(a)(2) of the 1933 Act

Even if the Plaintiffs' claim for a violation of Section 12(a)(2) was not time-barred, the Court would find that the Plaintiffs' complaint fails to state a violation of Section 12(a)(2).  Section 12(a)(2) states that "any person who offers or sells a security by means of a prospectus or oral communication which includes an untrue statement of material fact or omits to state a material fact, shall be liable to the person purchasing such securities from him, . . ." 15 U.S.C. § 771(a)(2).  Thus, Section 12(a)(2) liability rests on material misrepresentations or omissions in a prospectus.  The Supreme Court has interpreted Section 12(a)(2) to extend only to initial public offerings of stock and not to secondary market transactions.  *Gustafson v. Alloyd Co.*, 513 U.S. 575, 568-84 (1995); 15 U.S.C. § 771(a)(2).  Without allegations of material misstatements or omissions in a prospectus related to initial public offerings, a claim of a Section 12(a)(2) is deficient.  Likewise, mirroring Section 12(a)(1), Section 12(a)(2) liability rests only on the defendant who actually sold the securities to the plaintiff.  *Pinter*, 486 U.S. at 650; *Wolf v. Banco National De Mexico*, 549 F. Supp. 841, 845 (N.D. Cal. 1982).

### 1.    Glenn Michael

Broker Defendant Glenn Michael argues that the Plaintiffs' complaint fails to allege that the securities were purchased in an initial public offering.  Plaintiffs complaint plainly alleges that the Great White shares were purchased in the secondary, OTC market.  Plaintiffs' Complaint, ¶¶ 9, 10, 20.  The complaint also fails to allege that the Plaintiffs purchased Great White shares directly from Glenn Michael.  These defects are fatal to the Plaintiffs' complaint of a section 12(a)(2) violation against Glenn Michael.  Without these essential elements, the Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(2) against Broker Defendant Glenn Michael.

16

### 2.     Taylor Stuart

Broker Defendant Taylor Stuart argues that the Plaintiffs' complaint fails to allege that the securities were purchased in an initial public offering.  Plaintiffs complaint plainly alleges that the Great White shares were purchased in the secondary, OTC market.  Plaintiffs' Complaint, ¶¶ 9, 10, 20.  The complaint also fails to allege that the Plaintiffs purchased Great White shares directly from Taylor Stuart.  These defects are fatal to the Plaintiffs' complaint of a section 12(a)(2) violation against Taylor Stuart.  Without these essential elements, the Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(2) against Broker Defendant Taylor Stuart.

### 3.     Kavanagh

Individual Defendant Kavanagh argues that the Plaintiffs' complaint fails to allege that the securities were purchased in an initial public offering.  Plaintiffs complaint plainly alleges that the Great White shares were purchased in the secondary, OTC market.  Plaintiffs' Complaint, ¶¶ 9, 10, 20.  Kavanagh continues by arguing that the Plaintiffs' complaint fails to allege that any of the Plaintiffs ever purchased Great White shares from Kavanagh.  Without these essential elements, the Plaintiffs' complaint fails to state a claim for a violation of Section 12(a)(2) against Individual Defendant Kavanagh.

### C.     Pleading Requirements of the Reform Act and Rule 9(b) as applied to Section 10(b) and Rule 10b-5 of the Exchange Act

To state a viable claim under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a misstatement or omission (2) of a material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).  In this case where the Plaintiffs allege violations of Section 10(b)

of the Exchange Act, the Court must also apply the stringent pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(1) ("Reform Act").  Thus, the Plaintiffs' complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation is made on information and belief, the complaint shall state with particularity all facts upon which that belief is formed."  15 U.S.C. § 87u-4(b)(1). Additionally, the Fifth Circuit has held that in cases such as this one, the Reform Act requires that, for every act or omission alleged to violate Section 10(b), the complaint must "state with particularity the facts giving rise to a strong inference" of scienter.  15 U.S.C. § 78u-4(b)(2); *Tuchman*, 14 F.3d at 1067-68.  Thus, in the Fifth Circuit, scienter allegations are sufficient only if: (1) they identified the facts and circumstances indicating the defendant's conscious or severely reckless behavior; or (2) they alleged a defendant's motive and opportunity to commit securities fraud.  *Coates v. Heartland Wireless Commun., Inc.*, 26 F. Supp. 2d 910, 910 (N.D. Tex. 1998) (citing *Tuchman*, 14 F.3d at 1067-68).

Section 21D(b)(1) of the Reform Act requires plaintiffs pleading securities fraud to "specify the statement contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997).  This is essentially the same standard the Fifth Circuit applies to allegations of fraud under Rule 9(b).  The Fifth Circuit has recognized that "the heightened pleading standard of Rule 9(b) serves an important screening function in securities fraud suits."  *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994).  The heightened pleading standard "provides defendants with fair notice of the plaintiffs' claims," protects defendants from harm to their reputation and good will, reduces the number of motions to strike filed in the district court, and

and then attempting to discover unknown wrongs. *Melder*, 27 F.3d at 1100; *Tuchman*, 14 F.3d at 1067. In order to satisfy Rule 9(b) and the [Reform Act], a plaintiff must plead specific facts and avoid reliance on conclusory allegations." *Branca v. Paymentech, Inc.*, 2000 WL 145083, at *3 (N.D. Tex. 2000). The complaint must attribute specific misleading statements to a particular defendant. *Zuckerman v. Foxmeyer Health Corp.*, 4 F. Supp. 2d 618, 622 (N.D. Tex. 1998). Moreover, a plaintiff is "obligated to distinguish among those sued and enlighten each defendant as to his or her part in the alleged fraud." *Zuckerman*, 4 F. Supp. 2d at 622.

The Reform Act also provides that where a plaintiff's claim depends upon proof that the defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). When a complaint fails to plead in conformity with the scienter pleading requirement, dismissal is required. *RGB Eye Assocs., P.A. v. Physicians Resource Group, Inc.*, 1999 WL 980801, at *4 (N.D. Tex. 1999) (citing 15 U.S.C. § 78u-4(b)(3)(A)). Likewise, Rule 9(b) requires heightened pleading of scienter. *Lovelace*, 78 F.3d at 1018-21; *Melder*, 27 F.3d at 1102-04; *Tuchman*, 14 F.3d at 1068-70.

### 1.    Dean Witter

Dean Witter argues that nowhere in the Plaintiffs' complaint is there a particular allegation of any specific misleading statement made by Dean Witter to the investing public. It is clear that the Reform Act now requires the complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). The Court's duty in such a circumstance is mandatory. Where a plaintiff has failed to satisfy this requirement, "the court shall, upon motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3).

Dean Witter makes two arguments that the Plaintiffs claim fails to sufficiently plead a Section 10(b) or Rule 10b-5 violation: (a) that the complaint fails to allege a material misstatement or omission specifically made by Dean Witter; and (b) that the complaint fails to sufficiently plead Dean Witter's scienter.

### (a)    Material Misstatement or Omission

Dean Witter argues that the Plaintiffs complaint at most alleges that unidentified Broker Defendants republished unspecified statements by others concerning Great White's financial condition, and that the Broker Defendants omitted material facts from unspecified public statements. Plaintiffs' Complaint, ¶¶ 22, 32.  These allegations fall short of the strict pleading requirements of the Reform Act.  In the complaint, the Plaintiffs fail to specify a single statement made by Dean Witter let alone provide any of the who, what, where, why and when details regarding such statements.  Thus, the Court must dismiss the Plaintiffs' complaint for violations of Section 10(b) and Rule 10b-5 against Dean Witter.

### (b)    Scienter

Even if the Plaintiffs' complaint were not defective for the reason cited in the previous paragraph, Dean Witter argues that the complaint fails to allege the requisite scienter of Dean Witter. Dean Witter argues that the Plaintiffs' scienter allegations are even less detailed than the allegations found to be insufficient in recent Fifth Circuit and district court rulings.  The complaint does allege that, as a group, the Broker Defendants "knew or should have known" of the fraudulent misstatements by Great White, its principals, and its promoters. The Plaintiffs, however, fails to cite with particularity any facts upon which their scienter assertions are based.  For example, Plaintiffs do not identify a single false or misleading statement that was allegedly republished by Dean Witter.

Plaintiffs have failed to allege facts that give rise to a strong inference of scienter on the part of Dean Witter.

The allegations of scienter also must fail because, according to Dean Witter, the group pleading of scienter is inadequate to specifically allege Dean Witter's state of mind. The Reform Act clearly requires that the Plaintiffs allege facts regarding the scienter of each defendant separate and apart from any other defendant. *Coates*, 26 F. Supp. 2d at 916. The Plaintiffs cannot rely on generic allegations that the Broker Defendants, as a group, acted "knowingly or recklessly." Such "rote conclusions" fail to meet Rule 9(b) requirements and clearly implicate the policy concerns of heightened pleading pursuant to Rule 9(b). Likewise, generic and group allegations, such as those in the Plaintiffs' complaint, are insufficient under the Reform Act's strict pleading standards. *Branca*, 2000 WL 145083, at *10. Therefore, the Court must dismiss the Plaintiffs' complaint against Dean Witter for violations of Section 10(b) and Rule 10b-5.

### 2.    Glenn Michael

Like Dean Witter, Broker Defendant Glenn Michael argues that the Plaintiffs' complaint fails to specify any statement made by Glenn Michael to anyone. Glenn Michael also argues that the complaint fails to allege any of the other elements of a Section 10(b) or Rule 10b-5 violation with respect to Glenn Michael. Plaintiffs fail to allege the specific statements made by Glenn Michael that were allegedly misleading. Plaintiffs also fail to allege any statements that would have rendered any alleged omission by Glenn Michael misleading. Because the complaint fails to specify each statement made by Defendant Glenn Michael that is alleged to be misleading, the Court must dismiss the Section 10(b) and Rule 10b-5 complaint against Glenn Michael.

### 3.    Equitrade

Equitrade argues that the Plaintiffs cannot rely on undifferentiated allegations against a group of defendants to state a claim for a Section 10(b) or Rule 10b-5 violation. Equitrade argues that the lack of specificity as to its conduct concerning any alleged misstatements or misleading omissions is fatal to the Plaintiffs' complaint against it. "Blanket allegations" of wrongdoing are unacceptable under the Reform Act, and the plaintiff must inform each defendant of the specific conduct which constitutes the alleged violation. *Lubin*, 688 F. Supp. at 1443. This the Plaintiffs have wholly failed to do.

### 4.    Barron Chase

Barron Chase argues that it has been lumped together with the other Broker Defendants in the Plaintiffs' complaint under Section 10(b) and Rule 10b-5. Like Dean Witter, Glenn Michael and Equitrade, Barron Chase argues that the complaint against it lacks the required specificity. Barron Chase argues that the Court should dismiss the complaint because the complaint fails to specify its participation in the fraudulent scheme alleged to violate Section 10(b) and Rule 10b-5. Absent specific allegations particular to Barron Chase, the Plaintiffs' complaint against Barron Chase fails to satisfy the pleading requirements of Section 10(b) and Rule 10b-5, and is dismissed.

### 5.    Josephthal

The Plaintiffs do not even mention Broker Defendant Josephthal in the body of their complaint, much less specifically identify Josephthal's role in the alleged fraudulent scheme. Like the other Defendants in this case, without specific allegations particular to Josephthal concerning alleged misstatements or misleading omissions, the Plaintiffs do not state a Section 10(b) or Rule 10b-5 claim against Josephthal. Therefore, Plaintiffs' complaint against Josephthal fails to satisfy

22

the pleading requirements of Section 10(b) and Rule 10b-5, and is dismissed.

### 6.    Taylor Stuart

Like the other Defendants, Taylor Stuart argues that the Plaintiffs have failed to specifically

identify any false statements that Taylor Stuart purportedly made or any duty on the part of Taylor

Stuart to disclose allegedly omitted facts, and that the allegations fail to adequately allege Taylor

Stuart's scienter.

### (a)    Material Misstatement or Omission

According to Taylor Stuart, although required to do so, the Plaintiffs failed to allege which

specific statements were misleading, the identity of the person making the statement, and the reason

why the statements were misleading. *Tuchman*, 14 F.3d at 1068; 15 U.S.C. § 78u-4(b)(1).  Rather,

Plaintiffs have generally alleged that the Broker Defendants, as a group, recklessly republished false

and misleading statements concerning Great White.  Plaintiffs' Complaint, ¶ 22.  Plaintiffs also

allege that Smith, Great White, and "their secretly paid promoters" made false statements in certain

unidentified promotional materials regarding Great White.  Plaintiffs' Complaint, ¶ 22.  Plaintiffs

fail to allege that Taylor Stuart made any of these false statements.

Likewise, Taylor Stuart argues that the complaint fails to allege facts that would give rise to

a duty on the part of Taylor Stuart to disclose.  The Supreme Court, in *Chiarella v. United States*,

445 U.S. 222, 235 (1980), held that, absent a duty to disclose, no liability under Section 10(b) will

attach: "When an allegation of fraud is based on nondisclosure, there can be no fraud absent a duty

to speak.  We hold that a duty to disclose under § 10(b) does not arise from the mere possession of

nonpublic market information."  Taylor Stuart argues that the Supreme Court expressly declined to

recognize a general duty to speak.  Rather, it argues, a duty to speak arises only from a fiduciary

relationship or from an insider to the transaction. Plaintiffs allegations fail to allege that Taylor

Stuart either was an insider to the transaction or that it had a special relationship of trust and

confidence with the Plaintiffs that could give rise to a claim fo fiduciary duty. Thus, assuming the

facts as alleged to be true, Plaintiffs failed to allege that Taylor Stuart had a duty to disclose the

allegedly omitted information to the Plaintiffs.

      **(b)   Scienter**

Taylor Stuart also argues that the complaint fails to adequately allege that Taylor Stuart acted

with the requisite state of mind. Instead, Plaintiffs allege in a general and conclusory manner that

"[e]ach of the Broker Defendants either intended to deceive the Plaintiffs and the class or were

reckless in failing to disclose the truth as to the nature of its role in the aforesaid unlawful

distribution . . . ." Plaintiffs' Complaint, ¶ 35. Taylor Stuart argues that this allegation falls short

of the Reform Act's pleading requirement that plaintiffs plead facts giving rise to a strong inference

of fraudulent intent. 15 U.S.C. § 78u-4(b)(2). Simply put, rote conclusions of recklessness do not

support an inference of intent to defraud. These allegations fail to provide the specific facts upon

which an inference of conscious behavior may be based. *Branca*, 2000 WL 145083, at *32. The

Plaintiffs' allegations therefore fail to adequately plead scienter as required by the Reform Act and

Federal Rule of Civil Procedure 9(b).

**7.   Kavanagh**

Individual Defendant Kavanagh argues that the Plaintiffs' "one size fits all" approach to

pleading, which lumps all the Defendants togther as a group, is insufficient to plead fraud under the

Reform Act and Federal Rule of Civil Procedure 9(b). Kavanagh argues that the complaint fails to

allege any transactions, accounts, or the time, place, or contents of the alleged misrepresentations

made by Kavanagh to the Plaintiffs. Kavanagh also argues that the complaint fails to sufficiently plead Kavanagh's state of mind. Finally, Kavanagh argues that the Plaintiffs' complaint fails to allege that the Plaintiffs relied on any statement or omission by Kavanagh. As for the other Defendants, the Court finds that the Plaintiffs allegations of fraud and for Section 10(b) and Rule 10b-5 violations are deficient.

### 8. Birkenfeld

Like the other Defendants, Birkenfeld argues that the complaint against him lacks the required specificity. Birkenfeld argues that the Court should dismiss the complaint because the complaint fails to specify his participation in the fraudulent scheme alleged to violate Section 10(b) and Rule 10b-5. Absent specific allegations particular to Individual Defendant Birkenfeld, the Plaintiffs' complaint against him fails to satisfy the pleading requirements of the Reform Act and Federal Rule of Civil Procedure 9(b) to adequately plead a violation of Section 10(b) and Rule 10b-5.

Accordingly, it is

**ORDERED** that Plaintiffs' claims for securities fraud and for violations of Sections 12(a)(1) & (2) of the 1933 Act against Dean Witter, Glenn Michael, Equitrade, Barron Chase, Birkenfeld, Kavanagh, Josephthal and Taylor Stuart are dismissed as time-barred. It is further

**ORDERED** that Defendants Dean Witter, Glenn Michael, Equitrade, Kavanagh, Josephthal, and Taylor Stuart's Motions to Dismiss for Failure to State a Claim are **GRANTED** as to:

(1) Plaintiffs' claim for a Section 12(a)(1) violation against Dean Witter, Glenn Michael, Equitrade, Kavanagh, Josephthal, and Taylor Stuart;

(2) Plaintiffs' claim for a Section 12(a)(2) violation against Glenn Michael, Kavanagh and

Taylor Stuart; and

(3) Plaintiffs' claims for securities fraud and for Section 10(b) and Rule 10b-5 violations against Dean Witter, Glenn Michael, Equitrade, Barron Chase, Josephthal, Taylor Stuart, Birkenfeld, Kavanagh

**SIGNED** this ___15___ day of December 2000.

**WALTER S. SMITH, JR.**
**UNITED STATES DISTRICT JUDGE**